IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, and CHRISTINA KISHIMOTO, in her official capacity as Superintendent of the Hawaii Public Schools, | ) ) ) ) ) ) | Civil No. 19-00259 HG-KJM |
| Plaintiffs-Appellants, | ) ) ) | |
| vs. | ) ) | |
| ACEN T., by and through his Parents, WAYNE and LEEANN T., | ) ) ) | |
| Defendant-Appellee. | ) ) ) ) | |
| _____ | ) ) | |
| ACEN T., by and through his Parents, WAYNE and LEEANN T., | ) ) ) | |
| Counter-Claimant, | ) ) ) | |
| vs. | ) ) ) | |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, and CHRISTINA KISHIMOTO, in her official capacity as Superintendent of the Hawaii Public Schools, | ) ) ) ) ) ) | |
| Counter-Defendants. | ) ) ) | |
| _____ | ) | |

**ORDER AFFIRMING DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER**

   Acen T. is a 12-year-old boy who was diagnosed with Autism

Spectrum Disorder in 2012. Acen was deemed eligible for and received benefits based on his Autism diagnosis from 2012-2017.

In 2018, the Department of Education, State of Hawaii determined that Acen was no longer eligible for Individuals with Disabilities Education Act benefits despite objections from his parents, Wayne and Leeann T.

Acen, by and through his parents, challenged the Department of Education's determination of ineligibility in a due process hearing.

An Administrative Hearings Officer determined that the Department of Education violated the Individuals with Disabilities Education Act by improperly rescinding Acen's eligibility.

Plaintiffs-Appellants/Counter-Defendants Department of Education and Christina Kishimoto, Superintendent of the Hawaii Public Schools, appeal the Administrative Hearings Officer's Decision.

Defendant-Appellee/Counter-Claimant Acen T., by and through his parents Wayne and Leeann T., brings a counterclaim alleging the Department of Education has violated Stay Put by not providing Acen with a new Individualized Education Program during the pendency of this proceeding.

The April 22, 2019 Decision of the Administrative Hearings Officer is **AFFIRMED**.

Appellee's Counterclaim is **DENIED.**

The Court **ORDERS** that the Department of Education, State of Hawaii and the IEP team meet and provide a new IEP for Acen T. no later than 30 days prior to the first day of the 2020-2021 school year.  The Court **ORDERS** that the Stay Put order remains in effect until Acen T.'s new IEP is implemented.

## PROCEDURAL HISTORY

On November 8, 2018, Acen T., by and through his parents Wayne and Leeann T., filed a request for a due process hearing, challenging the Department of Education, State of Hawaii's decision denying Acen T. benefits under the Individuals with Disabilities Education Act.  (ECF No. 8-1).

On April 22, 2019, the Administrative Hearings Officer issued its Findings of Fact, Conclusions of Law and Decision. (ECF No. 1-1).

On May 22, 2019, Plaintiffs-Appellants/Counter-Defendants Department of Education, State of Hawaii and Christina Kishimoto, in her official capacity as Superintendent of the Hawaii Public Schools, filed a Complaint in the United States District Court for the District of Hawaii appealing the Administrative Hearings Officer's April 2019 Decision.  (ECF No. 1).

On June 20, 2019, Defendant-Appellee/Counter-Claimant Acen T., by and through his parents Wayne and Leeann T., filed an Answer and Counterclaim.  (ECF No. 6).

On October 30, 2019, the Department of Education and Christina Kishimoto filed an Opening Brief. (ECF No. 17).

On December 16, 2019, Acen T. filed an Answering Brief. (ECF No. 18).

On January 17, 2020, the Department of Education and Christina Kishimoto filed a Reply. (ECF No. 21).

On February 24, 2020, the Court held a hearing on the Appeal. (ECF No. 23).

**STATUTORY FRAMEWORK: INDIVIDUALS WITH DISABILITIES EDUCATION ACT**

Congress enacted the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., to financially assist state and local agencies in educating students with disabilities. See Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1469 (9th Cir. 1993). The IDEA's goal is to ensure that children with disabilities are provided with a Free Appropriate Public Education ("FAPE") that is designed to meet their unique needs and prepare them for the future. 20 U.S.C. § 1400(d)(1)(A).

As a recipient of federal funds, the State of Hawaii, Department of Education must establish and maintain procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a FAPE. 20 U.S.C. § 1415(a). The mechanism for ensuring a FAPE is through the development of a detailed, individualized instruction plan known as an Individualized Education Program

("IEP") for each child.  20 U.S.C. §§ 1401(9), 1401(14), and
1414(d).  The IEP is a written statement, prepared at a meeting
of qualified representatives of the local educational agency, the
child's teacher, parent(s), and, where appropriate, the child.
The IEP contains, in part, a statement of the present levels of
the child's educational performance, a statement of the child's
annual goals and short term objectives, and a statement of
specific educational services to be provided for the child.  20
U.S.C. § 1401(19).  The IEP is reviewed, and if appropriate,
revised, at least once each year.  20 U.S.C. § 1414(d).

A parent may challenge an IEP by filing a request for a due
process hearing.  20 U.S.C. §§ 1415(b)(6), 1415(f).  A challenge
to an IEP may allege a procedural or substantive violation of the
IDEA.  J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d
431, 432–33 (9th Cir. 2010).  A procedural violation occurs when
a State violates the IDEA's statutory or regulatory procedures in
creating or implementing an IEP.  A substantive violation occurs
when a State offers an IEP that is not reasonably calculated to
enable the child to receive a meaningful educational benefit.
Id.

## BACKGROUND

Acen T. is a twelve-year-old boy.  He was diagnosed with
Autism Spectrum Disorder in 2012.  Pursuant to the requirements
of the Individuals with Disabilities Education Act ("IDEA"), an

Individualized Education Plan ("IEP") was developed to ensure
Acen T. was provided the special education and related services
necessary for him to receive a Free Appropriate Public Education
("FAPE").

Acen attended Pomaikai Elementary School from preschool
through fifth grade.  In May 2017, at the close of his fourth
grade school year, his IEP was updated.  (May 2017 IEP,
Petitioner's Ex. 7-8, ECF Nos. 9-8, 9-9).  The 2017 IEP required
that he receive the following services:

> 100 minutes of Special Education per week;
> 320 minutes of Speech/Language Therapy per quarter;
> 270 minutes of Counseling per quarter;
> Daily visual schedule;
> Daily end of day checklist;
> Daily rainy day schedule;
> Daily home/school communication;
> Transition time and reminders between activities;
> Permission for movement breaks, including bathroom breaks;
> 60 minutes of Parent Education per month;
> 60 minutes of Occupational Therapy Consult per quarter; and
> Transition plan to fifth grade.

(May 2017 IEP, Petitioner's Ex. 8.11, ECF No. 9-9).

Acen received additional services, including one-to-one
adult-to-student teaching, from February 2017-December 2017
pursuant to a settlement agreement with the State of Hawaii.
(Settlement Agreement, Petitioner's Ex. 11, ECF No. 9-12).

**April 2018 Decision Finding Acen T. IDEA Ineligible**

Acen was due for a mandatory triennial IDEA eligibility
review at the close of his fifth grade school year.  20 U.S.C. §
1414(a)(2).  Department of Education, State of Hawaii ("DOE")

6

officials administered several academic and cognitive tests to determine what, if any, services Acen required to receive a FAPE. (ECF No. 9-17). Acen's academic test results showed he was performing at an average or above average level as compared to his peers. (Id. at DOE 00085-100).

Acen was also observed in multiple settings, both in and out of the classroom, to review his emotional and behavioral development. The tests showed mixed results. Acen's teachers and the DOE psychologist who observed him at school reported he was generally able to socialize well in and out of class with his peers. (Id. at DOE 00101-02). The State conducted a Speech and Language Evaluation that recommended Acen could improve in social group situations, language skills with a buddy, reading and interpreting facial cues, reading social situations, and maintaining eye contact. (Id. at DOE 00103-10). An Occupational Therapy Evaluation and a Psychoeducational Evaluation were administered with similar results. (Id. at DOE 00070-82; Psychoeducational Evaluation at pp. 14-15). The Occupational Therapy Evaluation recommended Acen continue to receive classroom support, improve his interactions with peers, be allowed to take self-regulation breaks, and develop social skills in preparation for middle school.

Acen's parents expressed their concerns regarding their perception of Acen's emotional and behavioral deficits. Some of

their concerns included incidents of bullying reported by Acen. (March 13, 2019 Administrative Hearing Transcript at 1:18, 1:37, ECF No. 10-1). They also expressed concern about Acen's ability to handle the transition from elementary school to a larger middle school. (Id. at 1:52). Most concerningly, Acen's parents reported Acen had expressed suicidal thoughts and was diagnosed with Major Depressive Disorder. (Caringer Diagnosis Letter, ECF No. 9-2).

Acen's parents, family advocate, general education teacher, special education teacher, and DOE administrators met to discuss Acen's eligibility on April 5, 2018. (April 5, 2018 Eligibility Meeting, ECF No. 9-5). No decision was reached on Acen's IDEA eligibility during this meeting so a follow-up meeting was scheduled for April 23, 2018. (Id.)

After the April 23, 2018 meeting, the DOE determined that Acen was no longer eligible for IDEA benefits. (April 27, 2018 Prior Written Notice of Department Action, ECF No. 9-15).

**Due Process Complaint Filed**

Acen's parents filed a Due Process Complaint and Resolution Proposal against the DOE and Christina Kishimoto, Superintendent of the Hawaii Public Schools, seeking a declaration that Acen is IDEA eligible. (November 7, 2018 Due Process Complaint, ECF No. 8-1).

A mandatory "Stay Put" order went into effect after the

complaint was filed to ensure Acen receives the special education services required under his May 9, 2017 IEP pending a review of his eligibility.[1]  (Id.)  Acen has been receiving special education and services at Hawaii Technology Academy, the public charter school he now attends, pursuant to the Stay Put order.

The Administrative Hearings Officer presiding over Acen's complaint certified three questions for adjudication:

1)   Whether the DOE properly implemented Acen's May 9, 2017 IEP;
2)   Whether the DOE predetermined Acen's ineligibility; and
3)   Whether Acen's IDEA eligibility was properly determined.

(April 22, 2019 Decision at p. 4, ECF No. 1-1).

The Hearings Officer found that the DOE properly implemented the May 9, 2017 IEP and that the DOE did not predetermine Acen's eligibility status at the 2018 eligibility review.  (Id. at pp. 17, 21).  Neither party has appealed either of those determinations.

The Hearings Officer found that the DOE improperly rescinded Student's IDEA eligibility.  (Id. at p. 23).  Based on this finding, the Hearings Officer ordered the DOE to develop a new IEP that appropriately addresses Acen T.'s needs.  (Id. at p. 26).  The DOE appeals the Hearings Officer's ruling on the

_____

[1] A "Stay Put" order requires that a student whose IDEA eligibility is revoked must continue to receive the same educational placement during the pendency of an administrative proceeding challenging his/her eligibility determination.  20 U.S.C. § 1415(j).

Student's eligibility status.

**STANDARD OF REVIEW**

In evaluating an appeal of an administrative decision under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., a district court receives the records of the administrative proceedings and may hear additional evidence at the request of a party.  The standard of proof is by a preponderance of the evidence.  A court shall grant such relief as the court determines is appropriate.  20 U.S.C. § 1415(i)(2)(C).

**A.   Burden of Proof**

Under IDEA, the burden of proof in an appeal challenging an administrative decision regarding an Individualized Education Program ("IEP") is placed upon the party seeking relief, whether that is the child or the school district.  Hood v. Encinitas Union Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007).  The same is true for the administrative hearing.  Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 62 (2005).

As the party challenging the Administrative Decision, Appellant DOE bears the burden of demonstrating, by a preponderance of the evidence, that the decision of the Hearings Officer should be reversed.  Hood, 486 F.3d at 1103; J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 438 (9th Cir. 2010).

10

**B.    Deference**

Courts reviewing an administrative hearing must give "due weight" to the administrative decision, and must not "substitute their own notions of sound educational policy for those of the school authorities which they review."  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).

The District Court has discretion to decide the amount of deference it gives to the administrative findings.  Cty. of San Diego v. Cal. Spec. Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996).  When determining the level of deference to accord the hearings officer's findings, the court may give greater deference when the hearings officer's findings are "thorough and careful."  Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995), aff'd after remand on other issues, 462 Fed. Appx. 745 (2011).

Although the court must carefully consider the hearings officer's findings and address the hearings officer's resolution of each material issue, the ultimate determination of an IEP's appropriateness is reviewed de novo.  Id.

**ANALYSIS**

Acen T. is a 12-year old boy who has been diagnosed with Autism Spectrum Disorder.  Acen has been receiving benefits under the Individuals with Disabilities Education Act ("IDEA") since 2012.

In 2018, the Department of Education, State of Hawaii ("DOE") determined Acen no longer required IDEA benefits. Acen's parents challenged this decision.

The Administrative Hearings Officer presiding over Acen's complaint certified three questions for adjudication:

1)  Whether the DOE properly implemented Acen's May 9, 2017, IEP;
2)  Whether the DOE predetermined Acen's ineligibility; and
3)  Whether Acen's IDEA eligibility was properly determined.

(April 22, 2019 Decision at p. 4, ECF No. 1-1).

The Administrative Hearings Officer found in favor of the DOE on the first two questions. The Hearings Officer found in favor of Acen on the final question and ordered the DOE to formulate a new Individualized Education Plan ("IEP") to provide Acen with IDEA benefits.

Plaintiffs-Appellants/Counter-Defendants ("Appellants") DOE and Christina Kishimoto, as superintendent of the Hawaii Public Schools, appeal the Administrative Hearings Officer's substantive determination that Acen is IDEA eligible.

Defendant-Appellee/Counter-Claimant ("Appellee") raises a counterclaim alleging that the DOE violated the Stay Put mandate of 20 U.S.C. § 1415(j) by not updating Acen's IEP during the pendency of litigation. Appellee seeks an order affirming the Hearings Officer's Decision, denying Appellants' claims, enforcing Stay Put, and awarding attorney's fees.

## I.   Burden Of Proof

At the administrative hearing, the DOE bore the burden of proof that its evaluation and proposed student placement complied with the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 et seq. ("IDEA") requirements.  <u>Ashli C. ex rel Sidney C. v. State of Haw.</u>, No. CIV. 05-00429 HG-KSC, 2007 WL 247761, at *6 (D. Haw. Jan. 23, 2007).  Appellant DOE bears the burden of proof in this Court on appeal.  <u>See</u> <u>Clyde K. v. Puyallup Sch. Dist., No. 3</u>, 35 F.3d 1396, 1399 (9th Cir. 1994).

## II.  Deference

The parties dispute the level of deference that should be given to the Hearings Officer's findings of fact and conclusions of law.  The DOE argues that the Hearings Officer's decision is entitled to little deference because it omits relevant evidence and contains mistakes.  Appellee argues for the higher level of deference accorded to thorough and careful findings.

A hearings officer's findings are considered "thorough and careful" when the hearings officer participates in the questioning of witnesses, includes a complete factual background, and provides a discrete analysis supporting the ultimate conclusions.  <u>R.B., ex rel. F.B. v. Napa Valley Unified Sch. Dist.</u>, 496 F.3d 932, 942 (9th Cir. 2007).  A hearings officer's determination of a witness's credibility is generally entitled to deference.  <u>Amanda J. ex rel Annette J. v. Clark Cnty. Sch.</u>

<u>Dist.</u>, 267 F.3d 877, 889 (9th Cir. 2001).

The Administrative Hearings Officer's 27-page Decision in this case includes a careful and accurate factual background and analysis regarding Acen's IDEA eligibility. (April 22, 2019 Decision, ECF No. 1-1). The Hearings Officer explains her legal conclusions thoroughly, including citations to the relevant facts and discussion of the applicable law. She was involved actively in the questioning of witnesses over the two day hearing, both to clarify responses as well as to elicit follow-up responses.

The Hearings Officer's decision was thorough and careful and is entitled to a greater level of deference.

## III. Alleged Errors In The Hearings Officer's Decision

On appeal, the DOE argues that the Hearings Officer erred in determining Acen is IDEA eligible. The DOE makes the following allegations regarding the Hearings Officer's findings and conclusions:

1) The Hearings Officer erred by determining the DOE did not consider Acen's social deficits in its IEP analysis;
2) The Hearings Officer failed to properly apply the three-part IDEA eligibility test;
3) The Hearings Officer erred in considering "Drama" to be a form of specialized instruction;
4) The Hearings Officer erred in not allowing witnesses to testify regarding Acen's 504 eligibility; and
5) The Hearings Officer's erroneous findings led to the erroneous conclusion that Acen is IDEA eligible.

(DOE Opening Brief at pp. 11-12, ECF No. 17).

The Court finds that the DOE has not met their burden of

14

proving by a preponderance of the evidence that the Hearings
Officer erred in its findings of fact or conclusions of law.  The
Hearings Officer's Decision is **AFFIRMED**.

1.    **The Hearings Officer Properly Determined That The DOE
      Did Not Address Acen T.'s Need Of Special Education
      Services Related To His Social Deficits**

The Hearings Officer found that the DOE did not sufficiently
address Acen T.'s social deficits and needs in its April 27, 2018
Prior Written Notice denying him IDEA benefits.  (April 27, 2018
Prior Written Notice of Department Action, ECF No. 9-15).  The
DOE challenges the Hearings Officer's findings.

Acen's May 2017 IEP catalogued his behavioral and social
deficits.  (May 2017 IEP, Petitioner's Ex. 8.3, ECF No. 9-9).
Some of those deficits included difficulties with loud noises,
handling transitions, conversing with others, negotiating,
staying on task, and self-regulating.  (Id.)  The 2017 IEP set
attainable goals and provided Acen T. with multiple forms of
special education and services designed to address his academic,
behavioral, and social deficits, including:

        Extended School Year
        100 minutes of Special Education per week;
        320 minutes of Speech/Language Therapy per quarter;
        270 minutes of Counseling per quarter;
        Daily visual schedule;
        Daily end of day checklist;
        Daily rainy day schedule;
        Daily home/school communication;
        Transition time and reminders between activities;
        Permission for movement breaks, including bathroom breaks;
        60 minutes of Parent Education per month;
        60 minutes of Occupational Therapy Consult per quarter; and

15

Transition plan to fifth grade.

(May 2017 IEP, Petitioner's Ex. 8.11, ECF No. 9–9).

At a 2018 reevaluation, the DOE noted Acen's parents' continued concern about his behavioral issues. (April 27, 2018 Prior Written Notice of Department Action, ECF No. 9-15). The DOE also noted that Acen had expressed suicidal thoughts resulting in a diagnosis of Major Depression Disorder and anxious distress, diagnoses that did not exist when the 2017 IEP was issued. (Id.)

The DOE determined that despite Acen's emotional and behavioral issues, he "does not need specially designed instruction to access his academics." The DOE explained its decision by accurately noting that Acen's "academic scores are in the average to above average range." (Id.; ECF No. 9-17 at DOE 00085-100). The notice denying Acen's eligibility did not address whether the goals set in the May 2017 IEP were met.

Despite performing at a satisfactory level academically, Acen was still having behavioral issues both in school and at home at the time of his IEP evaluation. Those issues included suicidal ideation, anxiety caused meltdowns at home, and anxiety at school. Acen's 2018 Occupational Therapy Evaluation, Speech and Language Evaluation, and Psychoeducational Evaluation included recommendations that he continue to receive support in developing his social skills and in adjusting to novel

situations.  (Occupational Therapy Evaluation, ECF No. 9-3; Psychoeducational Evaluation at pp. 14-15, ECF No. 9-5; Speech and Language Evaluation, ECF No. 9-17).  The evaluations, which were available to the DOE at the April 2018 reevaluation meetings, support the Hearings Officer's finding that Acen did not meet all of the behavioral goals set in his 2017 IEP and that he is still in need of special education services to address his social and behavioral deficits.  (April 22, 2019 Decision at p. 24, ECF No. 1-1).

A student's academic, social, health, emotional, communicative, and physical needs must be considered in evaluating his IDEA eligibility.  34 C.F.R. § 300.304(c)(4); Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1500 (9th Cir. 1996).  A student with a qualifying disability who is performing well academically may still be IDEA eligible if he needs support in the areas of emotional or behavioral development.  L.J. by & through Hudson v. Pittsburg Unified Sch. Dist., 850 F.3d 996, 1005-07 (9th Cir. 2017).  Acen is precisely this type of student.

The Hearings Officer properly found that the DOE did not sufficiently address Acen's social deficits and needs in evaluating his IDEA eligibility.

## 2.  The Hearings Officer Properly Applied The Three-Part IDEA Eligibility Test

There is a three-part test to determine IDEA eligibility. "To qualify under IDEA, a child must satisfy three criteria: (i)

he must suffer from one or more of the categories of impairments delineated in IDEA, (ii) his impairment must adversely affect his educational performance, and (iii) his qualified impairment must require special education and related services." Capistrano Unified Sch. Dist. v. Wartenberg By & Through Wartenberg, 59 F.3d 884, 899 (9th Cir. 1995).

The Hearings Officer found that Acen satisfies the first two criteria of IDEA eligibility due to his Autism Spectrum Disorder diagnosis, 34 C.F.R. § 300.8(c)(1), and the adverse affects he faces from his disability. (April 22, 2019 Decision at p. 24, ECF No. 1-1). The DOE and Acen's parents agree that Acen suffers adverse effects from his Autism impairment. (April 5, 2018 Eligibility Meeting, ECF No. 9-5).

The DOE disputes the Hearings Officer's finding that Acen satisfies the third criteria of IDEA eligibility: a need for special education and related services.

In the context of IDEA eligibility, "special education" means "specially designed instruction." 34 C.F.R. § 300.39(a)(1). Specially designed instruction is defined as instruction that adapts "the content, methodology, or delivery of instruction" to cater to the needs of an IDEA eligible student. Id. at § 300.39(b)(3).

As noted by the Hearings Officer, the DOE is required to consider the effect of the special education services a student

is already receiving when determining whether the student needs special education under IDEA.  L.J. by & through Hudson v. Pittsburg Unified Sch. Dist., 850 F.3d 996, 1005-07 (9th Cir. 2017).  A student does not become ineligible because he or she is performing at a satisfactory level with the aid of special education services.

In 2018, fifth grade students at Pomaikai Elementary School, including Acen, were taught in an "inclusion classroom" with both general and special education students.  (March 13, 2019 Administrative Hearing Transcript at 1:58, 215-16, 226, ECF No. 10-2; March 14, 2019 Administrative Hearing Transcript at 2:44-45, 61, ECF No. 11-2).  The students received inclusion, or co-teaching, instruction from a general education teacher, Stephanie Young, and a special education teacher, Stephanie Vigneux.  (Id.) An inclusion classroom is "a regular education classroom with individualized special education supports."  Hailey M. ex rel. Melinda B. v. Matayoshi, No. CIV. 10-00733 LEK-BMK, 2011 WL 3957206, at *8 (D. Haw. Sept. 7, 2011).

Ms. Young clarified that although all students were taught together, the inclusion classroom style of teaching would not have existed absent the presence of special education students:

> **Hearings Officer:** Would there be an Inclusion classroom if there were no special ed children in it?
>
> **General Education Teacher Young**: No. Inclusion is special –– is including students with disabilities in your classroom.

19

(March 14, 2019 Administrative Hearing Transcript at 2:63, ECF
No. 11-2).

Ms. Vigneux confirmed that the reason she was involved in
the inclusion classroom was to provide specialized instruction
for Acen T. and the other special education students:

> **Appellants' Attorney:** Okay. So, as to Ms. Young, she was the
> general ed teacher, is that correct?
>
> **Special Education Teacher Vigneux:** Yes.
>
> **Appellants' Attorney:** And you were brought in to provide
> specialized instruction to certain children, is that
> correct?
>
> **Special Education Teacher Vigneux:** Yes.
>
> **Appellants' Attorney:** One of those children was [Acen T.],
> is that correct?
>
> **Special Education Teacher Vigneux:** Yes.

(March 13, 2019 Administrative Hearing Transcript at 1:180, ECF
No. 10-2.  See also Id. at 1:184, 193).

That Acen was educated alongside general education students
fully comports with the requirements of IDEA.  Under IDEA,
schools are obligated to educate special education students with
general education students to the "maximum extent appropriate."
20 U.S.C. § 1412(5)(A).  By providing an inclusion classroom, the
DOE was providing the type of learning environment envisioned by
IDEA--one that keeps general education and special education
students in the same classroom, while providing specialized
instruction for special education students like Acen.

The Hearings Officer properly applied the three-part IDEA eligibility test in determining that Acen received adapted, specially designed instruction in the fifth grade.

### 3. The Hearings Officer's Determination That "Drama" Is A Form Of Special Education Was Appropriate

The DOE argues that the Hearings Officer erred in considering Acen T.'s "Drama" instruction to be specialized instruction.

Acen's general education teacher, Stephanie Young, testified that the use of drama as a teaching method in her classroom was a strategy applied to all of her students.  (March 13, 2019 Administrative Hearing Transcript at 1:228-29, ECF No. 10-2). The exercise was designed so that the students, including Acen, would work in groups to describe a new word they had learned, what it meant, and how they could act out the meaning of that word so that others could understand its meaning.  (Id.)  The students would then demonstrate to the class how they would play act each word.  (Id.)

Acen's May 2017 IEP identifies Acen as needing assistance in developing his social and communication abilities.  (May 2017 IEP, Petitioner's Exs. 8.3, 8.8, ECF No. 9-9).  The IEP notes Acen's difficulties with communication, conversing with peers, and perspective taking.  (Id.)  The DOE's February 2018 Psychoeducational Evaluation confirmed that Acen's vocabulary could be improved through exposure to novel situations and role

play. (Psychoeducational Evaluation at pp. 14-15, ECF No. 9-5).

The Drama instruction Acen received directly provided exposure to

new situations and vocabulary, and an opportunity to role play as

a form of adjusting to new situations.

The fact that Acen was receiving his "Drama" instruction

from a General Education teacher as opposed to a Special

Education teacher is of no import. As stated by the Hearings

Officer:

> Not all general education teachers will use "Drama" and
> require small groups to acting [sic] out words as a
> means of learning new vocabulary. While General
> Education Teacher is using the method for all students
> who are in the inclusion setting, the same methodology
> is specifically recommended for [Acen] to reduce
> anxiety and learn. Therefore, [Acen] was receiving his
> specially designed instruction during the 2017/2018
> School Year, even if some general education students
> who were placed in the inclusion setting were receiving
> the same instruction.

(April 22, 2019 Decision at pp. 18-19, ECF No. 1-1). The

inclusion classroom was designed to allow Acen and other special

education students to receive their instruction alongside their

general education peers, from both general education and special

education teachers. (March 13, 2019 Administrative Hearing

Transcript at 1:58, 215-16, 226, ECF No. 10-2; March 14, 2019

Administrative Hearing Transcript at 2:44-45, 61, ECF No. 11-2).

The Hearings Officer did not err in citing "Drama" as a form

of special education.

### 4. The Hearings Officer Properly Deemed Acen T.'s Eligibility For A Section 504 Plan Irrelevant To The

**Due Process Hearing**

The DOE argues in its opening brief that this Court should overrule the Hearings Officer's findings, in part, because the Hearings Officer found testimony regarding the services Acen could receive under Section 504 of the Rehabilitation Act of 1973, 34 C.F.R. § 104.33(b)(1), to be irrelevant to the questions certified for adjudication.

Acen's eligibility under Section 504 was not one of the three questions certified in the due process hearing nor was it relevant to the adjudication of the certified questions. Only issues raised during the due process hearing are relevant on appeal. In its reply brief, the DOE acknowledges that "Any Issues Regarding Section 504 of the Rehabilitation Act were not pled as issues in this case and therefore cannot be part of this appeal." (DOE Reply Brief at p. 5, ECF No. 21).

The Hearings Officer properly recognized that discussions of Acen's Section 504 eligibility were irrelevant to the questions raised in Acen's due process complaint.

**5. The Hearings Officer's Conclusions Were Not Erroneous**

The DOE argues that the Hearings Officer's alleged erroneous findings of fact indicate the Hearings Officer came to an erroneous conclusion that Acen needs special education and is eligible for IDEA benefits.

The Hearings Officer's conclusion was based on a variety of

findings of fact including that Acen needed social instruction, a conclusion supported by the recommendations of multiple evaluations. (Occupational Therapy Evaluation, ECF No. 9-3; Speech and Language Evaluation at p. DOE 00103, ECF No. 9-17). The conclusion was also based on Acen's successful receipt of multiple forms of special education including an inclusion classroom, participation in a social group led by a behavioral specialist, the ability to leave class to self-regulate, the receipt of Occupational Therapy, the receipt of Speech and Language Therapy, as well as the use of a daily communication log. (April 22, 2019 Decision at p. 26, ECF No. 1-1).

### 6. Conclusion

Appellants have not met their burden of proving by a preponderance of the evidence that the Hearings Officer erred in its findings of fact or conclusions of law. The Hearings Officer's Decision is **AFFIRMED.**

## IV. Appellee's Counterclaim

Appellee invoked Stay Put pursuant to 20 U.S.C. § 1415(j) when he filed his Due Process Complaint on November 7, 2018. Appellee alleges the DOE violated Acen's Stay Put mandate by not reviewing and revising the May 2017 IEP during the pendency of this administrative and appellate process. (Appellee's Answer and Counterclaim, at pp. 6-12, ECF No. 6; Appellee's Opp. Brief at pp. 28-29, ECF No. 18).

24

One of the procedural safeguards provided to families challenging a child's IDEA eligibility is the "Stay Put" provision of 20 U.S.C. § 1415(j).  Stay Put ensures that a student whose IDEA eligibility is revoked shall continue to receive the "then-current educational placement" during the pendency of an administrative proceeding challenging his/her eligibility determination.  The Ninth Circuit Court of Appeals interprets a student's "then-current educational placement" as the placement set forth in his most recent IEP.  N.E. by & through C.E. & P.E. v. Seattle Sch. Dist., 842 F.3d 1093, 1096 (9th Cir. 2016); R.F. by Frankel v. Delano Union Sch. Dist., 224 F.Supp.3d 979, 988 (E.D. Cal. Dec. 19, 2016).

The Ninth Circuit has held that while Stay Put limits an educational agency's ability to change a student's educational placement, the agency must still satisfy its statutory obligations to review and, where appropriate, revise a student's IEP during the pendency of an administrative review.  Anchorage Sch. Dist. v. M.P., 689 F.3d 1047, 1056 (9th Cir. 2012); see also Forest Grove Sch. Dist. v. Student, 2018 WL 6198281, at *12 (D. Or. Nov. 27, 2018).

**2018-2019 School Year**

The DOE conducted its statutorily mandated evaluation regarding Acen's 2018-2019 school year IEP in April 2018.  During the evaluation, the DOE found that Acen was not IDEA eligible.

Acen still received the services outlined in his May 2017 IEP due to the Stay Put order.

The Hearings Officer's Decision contains a detailed review of the DOE's implementation of Acen's May 9, 2017 IEP. In a four-plus page section of her Order, entitled "Petitioner did not prove that Respondent materially failed [to] implement Student's May 9, 2017 IEP," the Hearings Officer evaluated each of the four areas of assistance that the May 9, 2017 IEP required. (April 22, 2019 Decision at pp. 17-21, ECF No. 1-1). Her Order listed the manner in which (1) special education, (2) speech, (3) language therapy, and (4) counseling were implemented. A careful and thorough evaluation by the Hearings Officer explained how the implementation related to each area of required services.

The Hearings Officer also evaluated the supplementary aids, services, modifications, and supports that the school personnel were required to provide.

In summary:

while the IEP requires a regulation plan, behavior plan and services aimed at appropriate interaction with peers, Student's IEP is read as a whole, and Student's articulated goals satisfy Student's need for a regulation plan, behavior plan, and appropriate social interaction.

For the reasons stated above, Petitioner did not prove that Respondent Failed [to] Implement Student's May 9, 2017, IEP.

(April 22, 2019 Decision at p. 21, ECF No. 1-1).

The Court agrees with the Hearings Officer's finding that

Acen did receive the services mandated in his May 2017 IEP during his 2018-2019 school year.  (Id.)

**2019-2020 School Year**

There is insufficient evidence before the Court to reach the question of whether the DOE properly implemented an IEP for the 2019-2020 school year.

### V. Attorney's Fees

Appellee seeks an order awarding reasonable attorney's fees and costs.  IDEA provides that the Court may award reasonable attorney's fees to a prevailing party who is the parent of a child with a disability.  20 U.S.C. § 1415(B)(i)(3)(B)(i)(I).  Appellee may file a motion for attorney's fees pursuant to District of Hawaii Local Rule 54.2.

//

//

//

//

//

//

//

//

//

//

//

**CONCLUSION**

The April 22, 2019 Decision of the Administrative Hearings Officer is **AFFIRMED.**

Appellee's Counterclaim is **DENIED.**

The Court **ORDERS** that the Department of Education, State of Hawaii and the IEP team meet and provide a new IEP for Acen T. no later than 30 days prior to the first day of the 2020-2021 school year. The Court **ORDERS** that the Stay Put order remains in effect until Acen T.'s new IEP is implemented.

IT IS SO ORDERED.

DATED: April 6, 2020, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

DEPARTMENT OF EDUCATION, STATE OF HAWAII, and CHRISTINA KISHIMOTO, in her official capacity as Superintendent of the Hawaii Public Schools v. ACEN T., by and through his Parents, WAYNE and LEEANN T.; Counter-Claimant ACEN T., by and through his Parents, WAYNE and LEEANN T. v. DEPARTMENT OF EDUCATION, STATE OF HAWAII; Civ. No. 19-00259 HG-KJM; **ORDER AFFIRMING DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER**